RONALD P. SLATES   State Bar #43712
KONRAD L. TROPE   State Bar #133214
   *Of Counsel*
RONALD P. SLATES, P.C.
500 S. Grand Avenue, Biltmore Tower Suite 2010
Los Angeles, California 90071
(213) 624-1515 / FAX (213) 624-7536
rslates2@rslateslaw.com
ktrope@tropelawgroup.com

Attorneys for Plaintiffs John (Beau) Billingslea and Cecelia Billingslea

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| JOHN (BEAU) BILLINGSLEA, an individual and CECELIA BILLINGSLEA, an individual<br><br>      Plaintiff,<br><br> vs.<br><br>HOWARD M. SILVERSTEIN, an individual; H. SILVERSTEIN AND COMPANY CPA, entity form unknown; and DOES 1 through 25, inclusive,<br><br>      Defendants. | CASE No.<br><br>**COMPLAINT FOR**:<br><br>1. Violation of § 10(b) of the Securities Exchange Act of 1933 and Rule 10(b)-(5);<br>2. Violation of § 12(a)(1) of the 1933 Securities Act;<br>3. Violation of the Racketeering Influence and Corrupt Organizations "RICO";<br>4. Breach of Contract;<br>5. Fraud and Deceit - Intentional Misrepresentation - Suppression of Fact;<br>6. Fraud and Deceit - Negligent Misrepresentation - Suppression of Fact;<br>7. Fraud and Deceit - Intentional Misrepresentation - Fraud in the Inducement;<br>8. Fraud and Deceit - Negligent Misrepresentation - Fraud in the Inducement;<br>9. Fraud and Deceit - Promise Made Without Intent to Perform;<br>10. Unjust Enrichment;<br>11. Conversion; and<br>12. Negligent Misrepresentation |

Plaintiffs, JOHN (BEAU) BILLINGSLEA, an individual and CECELIA

BILLINGSLEA, an individual (jointly referred to herein as "Plaintiffs" and/or

"Billingsleas"), hereby respectfully bring this Complaint and allege as follows:

## PARTIES

1.    Plaintiff, John (Beau) Billingslea ("J. Billingslea"), is now and was, at all times herein mentioned, an individual residing in the County of Los Angeles, State of California.

2.    Plaintiff, Cecelia Billingslea ("C. Billingslea"), is now and was, at all times herein mentioned, an individual residing in the County of Los Angeles, State of California.

3.    Plaintiffs are now and were, at all times herein mentioned, husband and wife.

4.    Plaintiffs are informed and believe, and based upon such information and belief allege that Defendant, HOWARD M. SILVERSTEIN ("Defendant" and/or "Silverstein"), is now and was, at all times herein mentioned, an individual residing in the City of Irvine, County of Orange, State of California.

5.    Plaintiffs are further informed and believe and based upon such information and belief allege that Silverstein is now and was, at all times herein mentioned, a certified public accountant duly licensed as same by the State of California, State Board of Accountancy.

6.    Plaintiffs are further informed and believe, and based upon such information and belief allege that Defendant, H. SILVERSTEIN AND COMPANY CPA ("Silverstein and Company") is now and was, at all times herein mentioned, an unknown entity owned and operated by Defendant Silverstein, which renders services as a financial advisor to its clients as well as other accounting services including but not limited to, tax preparation for companies in the United States and internationally.

7.    Plaintiffs are further informed and believe and based upon such information and belief allege that Silverstein and Silverstein and Company (jointly "Silverstein" and/or "Defendants Silverstein" herein) maintain a telephone number of 818/402-2845 and an email address of hsilversteincpa@gmail.com, and that Defendants

1  Silverstein utilized the aforesaid telephone number and email address in all of their
2  dealings with Plaintiffs herein.

3       8.      As permitted by Local Rule 19-1, Plaintiffs aver that the true names and
4  capacities of Defendants DOES 1 through 25, inclusive, whether individual, corporate,
5  associate or otherwise, are unknown to Plaintiffs, who therefore sue said Defendants
6  by such fictitious names. Plaintiffs will amend their Complaint to allege said Doe
7  Defendants' true names and capacities when the same has been ascertained.

8       9.      Plaintiffs are informed and believe, and upon such information and belief
9  allege, that each of the defendants named herein as DOES 1 through 25, inclusive, were
10 and are in some manner responsible for the actions, acts and omissions herein alleged,
11 and for the damage caused by the defendants, and are, therefore, jointly and severally
12 liable for the damages caused to Plaintiffs.

13      10.     Plaintiffs are further informed and believe, and upon such information and
14 belief allege, that each of the defendants including DOES 1 through 25, inclusive, were,
15 at all times herein mentioned, acting in concert with, and in conspiracy with, each and
16 every one of the remaining defendants.

17      11.     At all times herein mentioned, defendants, and each of them, were an
18 owner, a co-owner, an agent, representative, partner, and/or alter ego of its
19 co-defendants, or otherwise acting on behalf of each and every remaining defendant
20 and, in doing the things hereinafter alleged, were acting within the course and scope of
21 their authorities as an owner, a co-owner, an agent, representative, partner, and/or alter
22 ego of its co-defendants, with the full knowledge, permission and consent of each and
23 every remaining defendant, each co-defendant having ratified the acts of the other
24 co-defendants.

25      12.     Wherever appearing in this Complaint, each and every reference to
26 defendants or to any of them, is intended to be and shall be a reference to all defendants
27 hereto, and to each of them, named and unnamed, including all fictitiously named
28 defendants, unless said reference is otherwise specifically qualified.

COMPLAINT

**JURISDICTION AND VENUE**

13.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1138(a) because federal questions are presented under the Securities Act of 1933, 15 U.S.C. §§ 77a *et. seq.*, as amended, and in particular, §§ 5, 12(1), 15, and 20, the Securities Exchange Act of 1933, 15 U.S.C. §§ 78j *et seq., as amended,* and in particular, § 10(b) and Rule 10b-5, 28 U.S.C. § 1331.   Original jurisdiction for this Court is also predicated on violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), codified at 18 U.S.C. §§ 1961-1968. The RICO claims are predicated upon violations of 18 U.S.C. §§ 1962 and 1964. The Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 as the non-federal question claims arise from the same nucleus of operative facts.

14.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(1) and (b)(2) because Plaintiffs reside in this judicial district and the events or omissions giving rise to the claims occurred in this judicial district, and all monies due to Plaintiffs from Defendants were due and payable in this judicial district.

**ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

15.     Over the past twenty years, Defendant Silverstein and his wife were close personal friends of and financial advisors to Plaintiffs John and Cecelia Billingslea. The parties socialized frequently and Plaintiffs often sought out Defendant Silverstein's advice on various financial matters over the years.

16.     At all times herein mentioned, Silverstein was a close personal friend, confidant,  personal and financial advisor to Plaintiffs.  As a result thereof, Plaintiffs placed a high degree of confidence in suggestions made by Silverstein with regard to potential financial investments that would benefit Plaintiffs.

17.     On the morning of October 4, 2020, during a FaceTime meeting between Silverstein, individually and on behalf of Silverstein and Company and Plaintiffs, Silverstein explained the investment "program" as follows:

a.     Plaintiffs were directed by Silverstein to deposit their money into

Silverstein's Chase Bank account.  Silverstein would then send their money along with others' money, to Volta in the U.K. which was allegedly managed by Rupon Anandanadarajah ("Rupon"). Plaintiffs would then be paid a 10% return on their principal investment by Silverstein via wire transfer, and Plaintiffs (most importantly) would be able to withdraw their money at any time;

    b.    Silverstein continually reiterated during this initial FaceTime meeting that this was a "safe investment" for Plaintiffs and that he, as a trusted confidant and personal and financial advisor, would never encourage Plaintiffs to enter into an investment which was not totally safe or could/would in any way result in the loss of Plaintiffs' investment therein

18.    On the afternoon of October 4, 2020 at approximately 1:35 p.m., Plaintiffs received an email from Defendants Silverstein thanking them for being on the FaceTime call with him and Maggie Smith, J. Billingslea's former theatrical manager from 1995-2015 who is now totally incapacitated as a result of Lewy Body Dementia, along with a PDF attachment of the Volta website which pertained to the investment which Silverstein had encouraged Plaintiffs to make.  A true and correct copy of said email is attached hereto and incorporated herein by reference as Exhibit "1".

19.    At 4:04 p.m. on October 4, 2020, Plaintiffs received an email from Silverstein, individually and on behalf of Silverstein and Company further explaining the investment program.  A true and correct copy of said email is attached hereto and incorporated herein by reference as Exhibit "2".

20.    On October 8, 2020, Silverstein sent an email to Plaintiffs setting forth the Chase bank account number (#xxxxx9739) into which Silverstein had directed that they deposit their money.  A true and correct copy of said email is attached hereto and incorporated herein by reference as Exhibit "3".

21.    On October 8, 2020, Plaintiffs, in reasonable detrimental reliance on

1   Silverstein's then unknown to them fraudulent representations, deposited their check
2   #3036 in the sum of $30,000.00 into Silverstein's Chase Bank account.  A true and
3   correct copy of said check is attached hereto and incorporated herein by reference as
4   Exhibit "4".

5       22.     On October 10, 2020, Silverstein acknowledged receipt of the $30,000.00
6   via email, and promised Plaintiffs that the funds had been wired to Volta's trust account
7   in the U.K. by him.  A true and correct copy of said email is attached hereto and
8   incorporated herein by reference as Exhibit "5".

9       23.     On November 3, 2020, a $2,250,00 payment for October was deposited
10  into Plaintiffs' bank account (this was the only return on investment payment ever
11  received despite Silverstein's ongoing still unknown to Plaintiffs false and fraudulent
12  promises that additional sums were forthcoming as set forth herein below).  Said
13  $2,250.00 represented 2/3 of the monthly return on investment for October because
14  Plaintiffs' funds were not deposited into Silverstein's Chase Bank account until
15  October 10, 2020.

16      24.     On November 4, 2020, Silverstein emailed Plaintiffs stating that there was
17  a ". . . new understanding of the project" with Rockwall Energy Fund.  A true and
18  correct copy of said email and a PDF of the Rockwall Energy Fund website attached
19  thereto is attached hereto and incorporated herein by reference as Exhibit "6".

20      25.     On November 6, 2020, Plaintiffs deposited another $20,000.00 (Check
21  #3140) into Silverstein's Chase bank account (based on Silverstein's still unknown to
22  them fraudulent representations) bringing the total to $50,000.00.  A true and correct
23  copy of said check is attached hereto and incorporated herein by reference as Exhibit
24  "7".

25      26.     On December 15, 2020, J. Billingslea called Silverstein at 818/402-2845
26  and had a telephone conference with Silverstein wherein he advised J. Billingslea that
27  he had been in the hospital for a few days with heart related issues and that's why
28  Plaintiffs had not received the 10% return on investment payment for November.  J.

Billingslea asked again for Rupon's information for their protection, and Silverstein promised that he would send Rupon's email address to J. Billingslea. Silverstein further stated that Rupon had a list of everyone and how much each person had deposited into Silverstein's account. Silverstein also advised J. Billingslea that he (Silverstein) should have the money tomorrow (12/16/20) and would distribute it then to Plaintiffs.

27.   Having not received the promised money, on December 18, 2020, J. Billingslea called Silverstein at 818/402-2845 and had a telephone conference with Silverstein wherein he stated that he (Silverstein) had "spoken to the guy (Silverstein never gave J. Billingslea his name) an hour or so ago and was expecting money tomorrow."

28.   On January 15, 2021, J. Billingslea emailed Silverstein at Hsilversteincpa@gmail.com asking if the program had collapsed since Plaintiffs hadn't received the 10% per month return on investment payments as promised. A true and correct copy of said email is attached hereto and incorporated herein by reference as Exhibit "8".

29.   On January 16, 2021, Silverstein responded to J. Billingslea's email of January 15, 2021 stating "I spoke with the banking person (no name was provided by Silverstein) late this afternoon and I expect to have you paid and current early this week . . .". A true and correct copy of said email is attached hereto as Exhibit "9".

30.   On January 21, 2021, J. Billingslea called Silverstein at 818/402-2845 and had a telephone conference with Silverstein wherein Silverstein stated "End of next week they'll (Silverstein never identified who 'they' are) be wiring the money and I'll get it to you. Signatures and paperwork are holding up payment; spoke with people (who were never identified by Silverstein) in the UK and will talk with them tomorrow. New people get 5-7%. You get 10%. Will call you after talking with them." Silverstein never called.

31.   On February 4, 2021, J. Billingslea called Silverstein at 818/402-2845 and

COMPLAINT

had a telephone conference with Silverstein wherein Silverstein stated "Spoke with banker (who Silverstein never identified by name) today, money being transferred. Got final paperwork notarized, will get money Monday or Tuesday and you'll get double (2 months) payment at end of month. November and December money next week."

32.     On February 9, 2021, J. Billingslea called Silverstein at 818/402-2845 and had a telephone conference with Silverstein wherein Silverstein stated "just got off the phone with the money guy (whose identity Silverstein did not reveal) and he said we'll have all the money in the next 2-3 days. You'll be current before end of week."

33.     On February 12, 2021, J. Billingslea called Silverstein at 818/402-2845 and had a telephone conference with Silverstein wherein Silverstein stated "just got off the phone with the money guy (whose identity again was not disclosed) who said money has been transferred (Silverstein never disclosed from where or from whom). Monday is a bank holiday so it'll be transferred to me (Silverstein) and I'll get it to you (Billingsleas) Tuesday or Wednesday. I'll call you as soon as it's in my account. It was transferred today around noon." Silverstein never called Billingsleas.

34.     On February 17, 2021, J. Billingslea called Silverstein at 818/402-2845 and had a telephone conference with Silverstein wherein Silverstein stated "I'm supposed to get the money tomorrow. Soon as I get it I'll call you, I just have to coordinate with the bank (Silverstein never disclosed which bank) so I can wire it to you."

35.     On February 18, 2021, J. Billingslea did a Google search for Rockwall Energy Fund (see Exhibit "6" hereto) and learned that it did not exist. J. Billingslea immediately called Silverstein at 818/402-2845 with regard to the information he had learned and Silverstein stated "that didn't materialize".

36.     On February 19, 2021, J. Billingslea called Silverstein at 818/402-2845 and had a telephone conference with Silverstein wherein Silverstein stated "I'll be talking to them in the next half hour. I'm just waiting for them to release the money to me. I may get the money today or tomorrow. One of the guys (Silverstein never

disclosed their names) with the money is in Texas and everything has slowed to a crawl in Texas.  It's already been confirmed that everything is ready to go".  J. Billingslea advised Silverstein that this situation was causing Plaintiffs a lot of stress because the $50,000.00 deposited into Silverstein's bank account was earmarked to pay off Plaintiffs' granddaughter's college loans.

37.    On February 25, 2021, J. Billingslea called Silverstein at 818/402-2845 and had a telephone conference with Silverstein wherein Silverstein stated "They were at the bank today and I expect to hear from them in the next 15-20 minutes.  It's ready to go, I could wire it out in the next couple of days.  Will call you after talking to them."  However, as usual, Silverstein never called.

38.    On March 1, 2021, J. Billingslea called Silverstein at 818/402-2845 and had a telephone conference with Silverstein wherein Silverstein stated "I can't stand up because of my back.  I'll be getting money tomorrow . . . thought it was supposed to be today but it was delayed a day.  By tomorrow I'll get everybody caught up.  I'll get you paid for November/December and at the end of the week you'll get a double payment to get you current. $10,000 tomorrow then another $10,000 Friday or Monday.  There was a screw-up by somebody else (Silverstein never disclosed the name) I was dealing with but by tomorrow I'll get you paid for November and December.  We'll talk tomorrow".  J. Billingslea told Silverstein that he wanted the entire $50,000.00 back.  Silverstein never called him.

39.    On March 2, 2021, J. Billingslea called Silverstein at 818/402-2845, got Silverstein's voicemail and left a message that Plaintiffs wanted the entire $50,000.00 returned forthwith.

40.    On March 3, 2021, J. Billingslea called Silverstein at 818/402-2845 and had a telephone conference with Silverstein wherein Silverstein stated "Was told by the people in London getting the money on Friday or early next week.  Should get the double payment next week.  The money is in London and it's just a matter of getting it transferred.  I may give everybody a bonus.  I'll bring you current $20,000 by

Tuesday or Wednesday next week."  J. Billingslea again told Silverstein that the Billlingsleas wanted the entire $50,000.00 returned.  Silverstein assured J. Billingslea that the principal was not at risk.

41.    On March 8, 2021, J. Billingslea sent an email to Silverstein again at Hsilversteincpa@gmail.com requesting Rupon's contact information.   A true and correct copy of said email is attached hereto and incorporated herein by reference as Exhibit "10".

42.    Later on March 8, 2021, J. Billingslea telephoned Silverstein at 818/402-2845 and left a voicemail message for Silverstein that he still wanted Rupon's contact information.

43.    On March 10, 2021, J. Billingslea called Silverstein at 818/402-2845 and had a telephone conference with Silverstein wherein Silverstein stated "They'll (Silverstein never disclosed who 'they' are) be transferring money if not today, tomorrow" and Silverstein promised that Silverstein would contact J. Billingslea tomorrow (March 11, 2021).

44.    On March 11, 2021, J. Billingslea called Silverstein at 818/402-2845 and had a telephone conference with Silverstein wherein Silverstein stated that Silverstein was "expecting money tomorrow.  Delay was because one of the people is in the hospital so we have to get someone else to transfer the money.  The person is in Beverly Hills.  Effectively you're owed 4 monthly payments.  So I'll send you 2 payments covering November/December and January/February.  Your principal is secure, it's just getting you the return on investment payment on it.  I'll call you tomorrow, you'll be getting 2 payments of $10 grand each".  Again, J. Billingslea told Silverstein to return the $50,000 which Plaintiffs had invested forthwith.

45.    On March 12, 2021, J. Billingslea called Silverstein at 818/402-2845 and had a telephone conference with Silverstein wherein Silverstein stated "On the phone with them now, can I call you back?"  Silverstein, however, never called back.

46.    On March 15, 2021, J. Billingslea called Silverstein at 818/402-2845 and

had a telephone conference with Silverstein wherein Silverstein stated "they'll be transferring me money tomorrow.   You'll have all of your money, if not tomorrow, Wednesday.  I'll call you tomorrow and tell you what I'm sending you".  Again, J. Billingslea told Silverstein to return the $50,000 investment and provide him with Rupon's address forthwith.  Silverstein did neither.

47.   On March 16, 2021, J. Billingslea left another voicemail message for Silverstein at 818/402-2845 advising Silverstein that he must return Plaintiffs' $50,000 investment and give J. Billingslea Rupon's contact information.  J. Billingslea also advised Silverstein that if anything happened to Silverstein, Plaintiffs had no way of recouping their money.

48.   On March 22, 2021, J. Billingslea called Silverstein at 818/402-2845 and had another telephone conference with Silverstein wherein Silverstein stated "I'll have money for you Wednesday.  I thought it was going to be today."  J. Billingslea again asked Silverstein to return the $50,000 investment and to provide him with Rupon's contact information forthwith.   In response thereto, Silverstein stated "I have to coordinate all of that.  I want you to be happy" and promised that the return on investment payments would be coming by the end of the week and the $50,000 would be returned by the middle of the next week. Neither ever happened.

49.   On March 25, 2021, J. Billingslea called Silverstein at 818/402-2845 and had a telephone conference with Silverstein wherein Silverstein stated "they've got the money.  It's just a matter of releasing it to me (Silverstein).  Could be tomorrow or worst case scenario, Monday.  I'll be talking to the guy in the next hour to hour and a half.  I'll call you after talking to him and will give you Rupon's information." Again, Silverstein never called back.

50.   On April 1, 2021, J. Billingslea called Silverstein at 818/402-2845 and had a telephone conference with Silverstein wherein Silverstein stated "I was told about ½ hour ago that they'll be transferring the money tomorrow.  It's Good Friday, but I may be able to wire the money out Saturday.  I may be getting confirmation in a couple of

hours.  I'll call you back after that."  When J. Billingslea reminded Silverstein that Silverstein still hadn't provided Rupon's information, Silverstein responded "I've been swamped.  I thought about it today.  I'll send it to you.  I apologize.  It's just been crazy with tax season and all.  I'll call you tomorrow."

51.     On April 5, 2021, J. Billingslea called Silverstein again at 818/402-2845 and had a telephone conference with Silverstein wherein Silverstein stated "I'll have the money on Wednesday and you (Billingsleas) will have it probably no later than Thursday.  Certain paperwork hadn't been cleared and other monies hadn't been received but everything is formalized.  I (Silverstein) was told this last night as far as what's happening".  J. Billingslea told Silverstein that this is all just horrible and it's having a great negative affect both financially and emotionally on Plaintiffs' lives.

52.     On April 5, 2021, J. Billingslea called Silverstein again at 818/402-2845 and had a telephone conference with Silverstein wherein Silverstein stated "It's Easter Monday and therefore they are closed.  They're on an Easter Holiday".  J. Billingslea advised Silverstein that this was nonsense and that it had nothing to do with Silverstein giving J. Billingslea Mr. Rupon's contact information.  Silverstein agreed and promised to get the information to J. Billingslea that night or the next day. To date, Silverstein has never provided J. Billingslea with Rupon's contact information.

53.     On April 8, 2021, J. Billingslea called Silverstein at 818/402-2845 and had a telephone conference with Silverstein wherein J. Billingslea advised Silverstein that Silverstein's actions were totally disrupting Plaintiffs' lives both financially and emotionally, and J. Billingslea accused Silverstein of scamming the Billingsleas.  Silverstein, of course, denied it.

54.     On April 9, 2021, J. Billingslea called Silverstein at 818/402-2845 and left a voicemail message requesting that Silverstein call J. Billingslea back.  Silverstein never did.

55.     On April 14, 2021, J. Billingslea called Silverstein again at 818/402-2845 and left a voicemail message for Silverstein to call J. Billingslea back.  Silverstein

1   never did.

2        56.    On April 15, 2021, J. Billingslea again called Silverstein at 818/402-2845.

3   During said telephone call Silverstein stated "Got a call about 2 hours ago saying I'll

4   have the money tomorrow. My plan is to call you when I have it. Because it's a large

5   sum of money, I might not be able to release it until Monday. It's all been projections.

6   The banker (whose name Silverstein never disclosed), the guy (whose name Silverstein

7   never disclosed) who has the money and me will be on the phone and I'll give him my

8   direct wire information. My plan is to send you 2 or 3 wires. November/December,

9   January/February and the third would be March. Haven't sent Rupon's information

10   because I've been so busy. I'll get you the information tomorrow. I apologize. I'll call

11   you tomorrow. Silverstein never paid the promised monies and never provided

12   Rupon's information.

13        57.    On April 16, 2021, J. Billingslea called Silverstein at 818/402-2845 and

14   left a voicemail message for Silverstein requesting that Silverstein please call J.

15   Billingslea. Silverstein never did.

16        58.    On April 19, 2021, J. Billingslea sent a demand letter to Silverstein via

17   email to Hsilversteincpa@gmail.com demanding that Silverstein return the $50,000.00

18   investment to Plaintiffs. A true and correct copy of said demand letter is attached

19   hereto and incorporated herein by reference as Exhibit "11".

20        59.    On April 20, 2021, J. Billingslea again called Silverstein at 818/402-2845

21   and had a telephone conference with Silverstein wherein Silverstein told J. Billingslea

22   of Silverstein's physical problems and promised "Tonight between 8-8:30 p.m. I'll

23   know about the money situation . . . the return on investment plus 50,000 principal. I

24   owe you 6 months worth of return on investment payments so I'll take care of that as

25   well. Will call you later." Silverstein never did.

26        60.    On April 21, 2021, J. Billingslea called Silverstein at 818/402-2845 and

27   left Silverstein a voicemail to call J. Billingslea, that this is beyond absurd, and that it

28   has to end before it escalates to lawyers. To date, Silverstein has never called J.

1  Billingslea back, and Silverstein has never made any attempt whatsoever to pay to
2  Plaintiffs the $85,000.00 which Silverstein owes to them.

3      61.    In or about the middle of May, Plaintiffs retained Ronald P. Slates, Esquire
4  of Ronald P. Slates, A Professional Corporation (the "Firm"), to represent them with
5  regard to the outstanding indebtedness due from Silverstein.

6      62.    On or about June 1, 2021, a demand letter was hand delivered to
7  Silverstein by Carl Knapp, the Firm's in-house investigator and registered process
8  server.  Mr. Knapp personally handed the demand letter to Silverstein who accepted
9  same without argument. A true and correct copy of said demand letter is attached hereto
10 and incorporated herein by reference as Exhibit "12".

11     63.    To date, Silverstein has never responded to the demand letter and has had
12 no further contact or communications with Plaintiffs nor has he made any payments
13 whatsoever to Plaintiffs to date.

14                         **FIRST CAUSE OF ACTION**

15     (Violation of § 10(b) of the Securities Exchange Act of 1933 and Rule 10(b)-(5)

16                              Against all Defendants)

17     64.    Plaintiffs reallege and incorporate herein by reference Paragraphs 1
18 through 63, inclusive, of Plaintiffs' Complaint with the same force and effect as though
19 set forth herein.

20     65.    The Defendants, and each of them, with scienter, by engaging in the
21 conduct described above, directly or indirectly, in connection with the purchase or sale
22 of securities by use of means or instrumentality of interstate commerce, or of the mails:

23          a.    Employed devices, schemes of artifices to defraud;

24          b.    Made untrue statements in material fact or omitted to a stated fact
25                necessary in order to make the statements made, in light of the
26                circumstances under which they were made, not misleading; or

27          c.    Engaged in acts, practices, or courses of business conduct which
28                operated or would operate as a fraud or deceit on other persons; in

1  violation of § 10(b) of the Securities Exchange Act (15 U.S.C. §

2  28j) and Rule 10(b)-(5) (17 C.P.R.) thereunder.

3      66.    By reason of the foregoing, each of the Defendants violated, and unless

4  restrained and enjoined will continue to violate § 10(b) of the Securities Exchange Act

5  and Rule 10(b)-(5) thereunder.

6      67.    Plaintiffs are informed and believe and based thereon allege that

7  Defendant Silverstein is a "control person" of H. Silverstein and Company CPA and

8  he acted as a control person within the meaning of § 20(a) of the Securities Exchange

9  Act.

10      68.    By virtue of Defendant Silverstein being a control person or owner of his

11  CPA practice, he clearly was in charge of the operations and had intimate knowledge

12  of the false financial information that he provided to Plaintiffs and, thus, had the power

13  to influence and control and did influence and control, directly or indirectly, the

14  conduct of his CPA business, including the content and dissemination of various

15  statements that Plaintiffs contend are false and misleading.

16      69.    Defendant Silverstein was directly in charge of these material

17  misstatements as set forth above, prior to and/or shortly after these statements were

18  made, and he had the ability to prevent the issuance of such statements or cause the

19  statements to be corrected.

20      70.    Plaintiffs are informed and believe and based thereon allege that by being

21  an owner of his CPA practice and functioning as an agent of the investments in Volta

22  and in Rockwall Energy Fund that Silverstein is presumed to have had the power to

23  control or influence the particular transactions giving rise to the securities violations as

24  alleged in this Complaint.

25      71.    As set forth above, Silverstein and any others acting in concert with him,

26  and each of them, violated § 10(b) of the 1933 Securities Exchange Act, 15 U.S.C. §

27  78j(b), and Rule 10(b)-(5), found at 17 C.F.R. § 240.10(b)-(5) as alleged in this

28  Complaint.  Thus, Silverstein by virtue of his position as a control person and owner,

1    is liable pursuant to § 20 of the Securities Exchange Act, 15 U.S.C. § 78t-1.

2    72.    As a direct and proximate result of these Defendants' wrongful conduct,

3    Plaintiffs suffered damages in connection with their investment [investment fund]

4    during the period of October 2020 through April 2021.

5    **SECOND CAUSE OF ACTION**

6    (Violation of § 12(a)(1) of the 1933 Securities Act

7    Against all Defendants)

8    73.    Plaintiffs reallege and incorporate herein by reference Paragraphs 1

9    through 63, inclusive, of Plaintiffs' Complaint with the same force and effect as though

10   set forth herein.

11   74.    No Registration Statement was in effect with the Securities and Exchange

12   Commission ("SEC") with respect to the investment made by Plaintiffs during the

13   period of October 2020 through April 2021.

14   75.    In the exercise of reasonable diligence, Plaintiffs had no reason to suspect

15   that Silverstein had no intention of complying with the registration requirements

16   applicable to the transaction at issue.  By entering into the foregoing transactions,

17   Silverstein affirmatively and fraudulently concealed the necessity for registration of the

18   investment and his lack of intent to maintain any such registration.

19   76.    Defendants, and each of them, by engaging in the conduct described

20   above, directly or indirectly, through use of the means or instruments of transportation

21   or communication in interstate commerce, or other mails, offered to sell or sold

22   securities, or, directly or indirectly, carry or cause of such securities to be carried

23   through the mails or interstate commerce for the purpose of sale or delivery after sale.

24   77.    By reason of the above, Defendants, and each of them, directly or

25   indirectly violated § 5(a) and (c) of the 1933 Securities Act, 15 U.S.C. § 77e(a), (c), and

26   are subject to liability under § 12(a)(1) of the 1933 Securities Act, 15 U.S.C. § 77(a)(1).

27   78.    Plaintiffs are informed and believe and based thereon allege that

28   Defendant Silverstein was a control person and/or owner of the fund in which Plaintiffs

1  invested and acted as a control person of Volta, within the meaning of § 15 of the 1933
2  Securities Act.

3  79.   By virtue of his high level position, either through ownership or
4  contractual rights that made him a control person, Silverstein participated in and was
5  aware of the false financial statements he made to Plaintiffs as well as was aware that
6  the investment to which he solicited Plaintiffs' investment should have been on file
7  with the SEC.  In short, Silverstein materially misstated the situation prior to and/or
8  shortly after making the false statements to Plaintiffs, and he had the ability to prevent
9  the issuance of these false statements or cause the statements to be corrected.

10  80.   Plaintiffs are informed and believe and based thereon allege that by virtue
11  of Silverstein's relationship with Volta, that he had direct and supervisory involvement
12  in day-to-day operations of Volta and in Rockwall Energy Fund and therefore is
13  presumed to have the power to control or influence the particular transactions giving
14  rise to the securities violations as alleged in this Complaint and exercise the same.

15  81.   As set forth above, Silverstein and anyone else operating in concert with
16  him violated § 12(a)(1) of the 1933 Securities Act, 15 U.S.C. § 77 / 77(a)(1), as alleged
17  in this Complaint.  By virtue of his position as a control person, Silverstein is liable
18  pursuant to § 15 of the Securities Exchange Act, 15 U.S.C. § 77(o).

19  82.   As a direct and proximate result of these Defendants' wrongful conduct,
20  Plaintiffs suffered damages in connection with their investment in Volta during the
21  period of October 2020 through April 2021.

22  **THIRD CAUSE OF ACTION**

23  (Violation of the Racketeering Influence and Corrupt Organizations "RICO"
24  Against all Defendants)

25  83.   Plaintiffs reallege and incorporate herein by reference Paragraphs 1
26  through 63, inclusive, of Plaintiffs' Complaint with the same force and effect as though
27  set forth herein.

28  84.   The relevant time period for Defendant Silverstein's pattern of

1  racketeering stems from October 2020 through April 2021, and possibly earlier, but at

2  this point in discovery is yet unknown and continues to the filing of this RICO

3  Complaint.

4      85.    Defendant Silverstein is and was at all times relevant to this action a

5  "RICO Person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

6                              **The RICO Enterprise**

7      86.    Defendant Silverstein has used an association-in-fact "enterprise" within

8  the meaning of 18 U.S.C. §§ 1961(4), to carry out the pattern of racketeering activity.

9  This enterprise consists of Defendant Silverstein's CPA business known as H.

10  Silverstein and Company CPA.  This enterprise possessed and continues to possess a

11  common purpose and goal, a membership, organizational structure, an ongoing

12  relationship between Defendant Silverstein, and H. Silverstein and Company CPA, with

13  sufficient longevity to permit and enable pursuit of the enterprise's purpose and long

14  term objective through a continuous course of conduct that affected and continues to

15  affect interstate and foreign commerce.

16      87.    This enterprise exists separate and apart from its pattern of racketeering

17  activity inasmuch as Defendant Silverstein and H. Silverstein and Company CPA have

18  multiple goals, not all of which are fraudulent.  The lawful activity engaged in by the

19  enterprise includes providing services that consumers can obtain from a certified public

20  accountant.  But, Defendant Silverstein has, since at least October 2020, used this

21  enterprise to conduct the related acts of mail and wire fraud comprising the pattern of

22  racketeering, as well as the continuous acts set forth hereinabove, which constitute

23  violations of the Securities Act.

24      88.    Defendant Silverstein is a "person" under the civil RICO statute because

25  he knowingly and fraudulently conducted and participated in the conduct, the

26  management and the operation of the enterprise's affairs, directly or indirectly, through

27  a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).  Defendant

28  Silverstein engaged in such unlawful conduct by using the enterprise to conduct lawful

1    activities as well as to further his fraudulent scheme of causing false and misleading

2    information to be disseminated to Plaintiffs by mail, interstate wires, or interstate

3    carriers which then seduced Plaintiffs unknowingly into investing in the false and

4    fraudulent scheme.  Silverstein and the enterprise not only pursued gain, but did so by

5    unlawful means whereby they maximized gain in profit through a pattern and practice

6    of deception, misrepresentation and concealment of the true state of affairs regarding

7    the financial investment in which Plaintiffs invested.  Silverstein, as a licensed CPA

8    under the state of California, had a duty to be truthful and lawful in his conduct which

9    he blatantly violated through his enterprise.

10                            **The RICO Predicate Acts**

11           89.    Defendant Silverstein and his CPA business, Defendant H. Silverstein and

12   Company CPA solicited multiple investments from Plaintiffs which investments were

13   fraudulent.

14           90.    For the purpose of devising and carrying out this scheme and artifice,

15   Defendant Silverstein did place in an authorized depository for mail, or did deposit or

16   caused to be deposited with private commercial interstate carriers, or knowingly caused

17   to be delivered by interstate commerce, letters, memoranda and other false

18   communications in violation of 18 U.S.C. § 1341, or aided and abetted in such criminal

19   acts as previously described under 18 U.S.C. § 2.

20           91.    For the purpose of devising and carrying out his fraudulent scheme and

21   artifice, Defendant Silverstein caused to be transmitted by means of wire

22   communication interstate commerce, writings, signals and sounds, to wit, interstate

23   electronic mail messages and/or facsimiles in violation of 18 U.S.C. § 1343, or aided

24   and abetted in such criminal acts as previously described, under 18 U.S.C. § 2.

25           92.    Examples include but are not limited to the following predicate acts which

26   were set forth in Paragraphs 13 through 48, and 55, which are restated as follows:.

27                  a.     Employed devices, schemes of artifices to defraud;

28                  b.     Made untrue statements in material fact or omitted to a stated fact

1         necessary in order to make the statements made, in light of the

2         circumstances under which they were made, not misleading; or

3     c.   Engaged in acts, practices, or courses of business conduct which

4         operated or would operate as a fraud or deceit on other persons; in

5         violation of § 10(b) of the Securities Exchange Act and Rule 10(b)-

6         (5) thereunder.

7    93.   Defendant Silverstein's RICO predicate acts in furtherance of his scheme

8 to fraudulently induce Plaintiffs to invest in fraudulent securities investments,

9 constituted a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5)

10 because the predicate acts are related and continuous.  Each predicate act described

11 hereinabove had the same or similar purpose: the predicate acts involved material

12 misrepresentations, omissions and concealment in a scheme to injure Plaintiffs and

13 defraud Plaintiffs of $50,000 which would have been more had Plaintiffs not finally

14 recognized the fraudulent nature of all the predicate acts described herein above.  This

15 pattern of racketeering is separate and distinct from the legitimate accounting activities

16 of Defendant Silverstein and his enterprise, H. Silverstein and Company CPA.

17    94.   Defendant Silverstein is associated with the enterprise and did conduct or

18 participate, directly or indirectly, in the management or operation of its conduct of the

19 affairs of the enterprise through racketeering activity within the meaning of 18 U.S.C.

20 §§ 1961(1)(B), 1961(5) and 1962(c), to wit:

21     a.   Multiple instances of mail fraud in violation of 18 U.S.C. § 1341;

22        and

23     b.   Multiple instances of wire fraud in violation of 18 U.S.C. § 1343.

24    95.   All of the predicate acts alleged above are related to the scheme of

25 Defendant Silverstein in his enterprise H. Silverstein and Company CPA.  The acts are

26 all related to a continuing series of fraudulent and illegal activity.  Continuities

27 demonstrate by the predicate acts alleged above because the pattern of racketeering

28 involves multiple predicate acts and related predicate acts that have taken place

---

between October 2020 and April 2021.

96.   These predicate acts in furtherance of Silverstein's fraudulent scheme illustrate a threat of continued racketeering activity and evince that the predicate acts constitute the regular way Defendant Silverstein conducts business.

97.   To date, Plaintiffs have been damaged in an amount of at least $50,000 plus prejudgment interest, attorneys' fees.

**FOURTH CAUSE OF ACTION**

(Breach of Contract Against All Defendants)

98.   Plaintiffs reallege and incorporate herein by reference Paragraphs 1 through 63, inclusive, of Plaintiffs' Complaint with the same force and effect as though set forth herein.

99.   There existed a contract between Plaintiffs and Defendants, the terms of which are set forth at Paragraphs 16 through 33, above.

100.   Plaintiffs have performed all terms, conditions and covenants required thereof under the contract described herein above.

101.   Defendants have failed to perform the various material covenants, terms and conditions required of them as set forth herein above.  Thus, Defendants are in material breach.

102.   By virtue of Defendants' breach, Plaintiffs have been damaged in an amount of at least $50,000 or an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**

(Fraud and Deceit - Intentional Misrepresentation - Suppression of Fact

Against All Defendants)

103.   Plaintiffs reallege and incorporate herein by reference Paragraphs 1 through 63, inclusive, of Plaintiffs' Complaint with the same force and effect as though set forth herein.

104.   Plaintiffs are informed and believe, and based upon such information and belief allege that commencing on October 4, 2020 and continuing through at least April

21, 2021, Defendants, and each of them, through Silverstein, personally, falsely, fraudulently and intentionally made the representations telephonically and in writing (via email) set forth in Paragraphs 16 through 58 hereinabove and as evidenced by Exhibits "1" through "11" hereto with regard to the investment venture with Defendants and Volta and/or other venture companies.

105.   The representations made by Defendants, and each of them, were in fact false, fraudulent and intentional.  The true facts were that Defendants, and each of them, through Silverstein, knew, at the time they made the foregoing false and fraudulent representations that there was no "investment program" whereby Plaintiffs would be paid a 10% return per month on their principal investment and there were no bankers and/or investment companies involved and in truth and in fact it was a "scheme" orchestrated by Defendants.  All of the false and fraudulent representations were made by Defendants, through Silverstein, to induce Plaintiffs into depositing a total of $50,000.00 into Defendants' account.

106.   Furthermore, Plaintiffs believe that (a) the payment of $2,250.00 on November 3, 2020 (which was allegedly the first "return on their principal investment") and (b) Defendants' ongoing promises from November 4, 2020 through at least April 21, 2021 that Plaintiffs would in fact be paid their 10% per month return on their principal investment would be "paid" (as set forth in Paragraphs 23 through 60 hereinabove) were made with the intent to lull Plaintiff into a false sense of security so that Plaintiffs would deposit into Defendants' account an additional $20,000.00 which Plaintiffs did on November 6, 2020 (as set forth in Paragraph 25 and as evidenced by Exhibit "7" hereto) and not take the appropriate legal action to collect the outstanding amounts due by the bringing of a lawsuit.

107.   Furthermore, Plaintiffs believe and thereon allege that Defendants, and each of them, never forwarded the $50,000.00 deposited into Silverstein's Chase Bank account by Plaintiffs to Volta or any other investment venture but rather kept said monies in his own bank account and/or in bank accounts over which Silverstein had

1  absolute custody and control, thus converting same to his own use and benefit so that

2  he could use same to further his fraudulent "investment program" and/or his lifestyle.

3      108.   Plaintiffs are further informed and believe and based thereon allege that

4  Defendants never had any intention whatsoever of paying Plaintiffs any additional sums

5  on their said investment but rather intended to keep said $50,000.00 investment and

6  convert same to their own use and benefit.

7      109.   When Defendants, and each of them, intentionally made these false and

8  fraudulent representations they knew them to be false, and these false and fraudulent

9  representations were made by Defendants, and each of them, with the intent to defraud

10 and deceive Plaintiffs, and with the intent to induce Plaintiffs to act in the manner

11 herein alleged.

12     110.   Plaintiffs, at the time these false and fraudulent representations were

13 intentionally made by Defendants, and each of them, and at the time Plaintiffs took the

14 actions herein alleged, were ignorant of the falsity of Defendants' representations and

15 believed them to be true.   In justifiable reliance on these false and fraudulent

16 representations, Plaintiffs were induced to and did deposit $50,000.00 in a bank account

17 controlled, exclusively, by Silverstein.  Had Plaintiffs known the actual facts, they

18 would never have deposited said $50,000.00 into a bank account controlled by

19 Silverstein. Plaintiffs reliance on Defendants' false and fraudulent representations was

20 justified because Silverstein (who is now and was, at all times mentioned herein, a

21 Certified Public Accountant) had been a long-time friend and personal and financial

22 advisor to Plaintiffs.

23     111.   As a proximate result of Defendants' fraud and deceit and the facts herein

24 alleged, Plaintiffs were deprived of not only the promised 10% per month return on

25 their investment but the ability to invest their monies in a reliable investment program,

26 all to Plaintiffs' damage in at least the sum of Fifty Thousand and 00/100 Dollars

27 ($50,000.00) or according to proof at the time of trial, together with interest thereon at

28 the lawful rate of 10% per annum from and after October 8, 2020 on the sum of

1  $30,000.00 and from and after November 6, 2020 on the sum of $20,000.00 plus the

2  promised 10% per month return on their investment from and after October 8, 2020 on

3  the sum of $30,000.00 and from and after November 6, 2020 on the sum of $20,000.00.

4    112. The aforementioned conduct of Defendants, and each of them, was

5  intentional misrepresentation, deceit or concealment of a material fact known to the

6  Defendants with the intention on the part of the Defendants of thereby depriving

7  Plaintiffs of property or legal rights or otherwise causing injury, and was despicable

8  conduct that subjected Plaintiffs to a cruel and unjust hardship in conscious disregard

9  of Plaintiffs' rights, so as to justify an award of punitive and exemplary damages.

10          **SIXTH CAUSE OF ACTION**

11    (Fraud and Deceit - Negligent Misrepresentation - Suppression of Fact

12          Against All Defendants)

13    113. Plaintiffs reallege and incorporate herein by reference Paragraphs 1

14  through 63, inclusive, of Plaintiffs' Complaint with the same force and effect as though

15  set forth herein.

16    114. Plaintiffs are informed and believe, and based upon such information and

17  belief allege that commencing on October 4, 2020 and continuing through at least April

18  21, 2021, Defendants, and each of them, through Silverstein, personally, negligently

19  made the false representations telephonically and in writing (via email) set forth in

20  Paragraphs 15 through 60 hereinabove and as evidenced by Exhibits "1" through "11"

21  hereto with regard to the investment venture with Defendants and Volta and/or other

22  venture companies.

23    115. When Defendants, and each of them, made the aforesaid representations

24  they made them with no reasonable grounds for believing them to be true, in that

25  Defendants, and each of them, knew or should have known, at the time the

26  representations were made, that (a) there was no investment venture that was paying

27  a 10% per month return on monies invested; and (b) Defendants did not have and

28  would not be able to pay to Plaintiffs the promised 10% per month return on their

investment.  Furthermore, at the time that Defendants, and each of them, made the aforesaid representations, Defendants knew or should have known that Defendants had no intention whatsoever of repaying the monies invested by Plaintiffs then or at any time in the future.

116.   The aforesaid representations were made by Defendants, and each of them, with the intent to induce Plaintiffs to act in the manner herein alleged, i.e. to invest $50,000.00 with Defendants, and each of them.

117.   Plaintiffs, at the time these representations were made by Defendants, and each of them, and at the time Plaintiffs took the actions herein alleged, were ignorant of the falsity of Defendants' representations and believed them to be true.  In justifiable reliance on these representations, Plaintiffs were induced to and did deposit $50,000.00 into the Chase Bank account of Defendants, and each of them.  Had Plaintiffs known the actual facts, they would not have deposited/invested $50,000.00 with Defendants, and each of them, but rather would have found another safer investment venture. Plaintiffs' reliance on Defendants' representations was justified because Defendant Silverstein was a long-time close personal friend, confidant and personal and financial advisor to Plaintiffs.

118.   As a proximate result of Defendants' negligent representations and the facts herein alleged, Plaintiffs were deprived of not only the $50,000.00 deposited into Silverstein's Chase Bank account but also the promised returns on their investment of 10% per month, all to Plaintiffs' damage in at least the sum of Fifty Thousand and 00/100 Dollars ($50,000.00) or according to proof at the time of trial, together with interest thereon at the lawful rate of 10% per annum from and after October 8, 2020 on the sum of $30,000.00 and from and after November 6, 2020 on the sum of $20,000.00 plus the promised 10% per month return on their investment from and after October 8, 2020 on the sum of $30,000.00 and from and after November 6, 2020 on the sum of $20,000.00.

## SEVENTH CAUSE OF ACTION

(Fraud and Deceit - Intentional Misrepresentation - Fraud in the Inducement Against All Defendants)

119.   Plaintiffs reallege and incorporate herein by reference Paragraphs 1 through 63, inclusive, of Plaintiffs' Complaint with the same force and effect as though set forth herein.

120.   Plaintiffs are informed and believe, and based upon such information and belief allege that commencing on October 4, 2020 and continuing through at least April 21, 2021, Defendants, and each of them, through Silverstein, personally, both telephonically and via email, made the intentional misrepresentations, fraudulent failures to disclose material information and fraudulent suppression of facts, set forth in Paragraphs 15 through 60 hereinabove and as evidenced by Exhibits "1" through "11" hereto, to Plaintiffs with regard to the investment venture with Defendants and Volta and/or other venture companies.

121.   Plaintiffs are informed and believe and thereon allege that Defendant Silverstein knew, fraudulently suppressed and failed to reveal to Plaintiffs the true facts, and that Defendant Silverstein knew or should have known, at the time he made the intentional misrepresentations that the fraudulent suppression of said material facts were likely to mislead the Plaintiffs and did in fact mislead the Plaintiffs.

122.   Plaintiffs are informed and believe and thereon allege that the foregoing intentional misrepresentations and fraudulent failures to disclose information and fraudulent suppressions of information herein alleged to have been made by Defendant Silverstein were made with the intent to induce Plaintiffs to act in the manner herein alleged in reliance thereon, and based thereon and upon the established relationship and trust and confidence that Plaintiffs reposed in Defendant Silverstein, and in actual and justifiable or reasonable reliance thereon, Plaintiffs invested $50,000.00 in the "investment program" as directed to do so by Defendant Silverstein.

123.   Plaintiffs, at the time these failures to disclose and fraudulent suppressions of facts occurred, and at the time Plaintiffs took the actions herein alleged, were

ignorant of the existence of the facts that Defendant Silverstein suppressed and failed to disclose.  If the Plaintiffs had been aware of the existence of the facts not disclosed by Defendant Silverstein, the Plaintiffs would not have, as they did, invested $50,000.00 in the investment program as directed to do so by Defendant Silverstein.

124.   As a proximate result of Defendants' fraud and deceit and the suppression of material facts as herein alleged, Plaintiffs have been damaged in an amount of at least the sum of Fifty Thousand and 00/100 Dollars ($50,000.00) or according to proof at the time of trial, together with interest thereon at the lawful rate of 10% per annum from and after October 8, 2020 on the sum of $30,000.00 and from and after November 6, 2020 on the sum of $20,000.00 plus the promised 10% per month return on their investment from and after October 8, 2020 on the sum of $30,000.00 and from and after November 6, 2020 on the sum of $20,000.00.

125.   The aforementioned conduct of Defendant Silverstein constituted intentional misrepresentation, fraud, deceit and suppression/concealment of material facts known to him with the intention on the part of Defendant Silverstein to deprive Plaintiffs of property or legal rights and otherwise cause injury, and was despicable conduct that subjected Plaintiffs to cruel and unjust hardship in conscious disregard of Plaintiffs' rights, so as to justify an award of punitive and exemplary damages.

## EIGHTH CAUSE OF ACTION

(Fraud and Deceit - Negligent Misrepresentation - Fraud in the Inducement

Against All Defendants)

126.   Plaintiffs reallege and incorporate herein by reference Paragraphs 1 through 63, inclusive, of Plaintiffs' Complaint with the same force and effect as though set forth herein.

127.   Plaintiffs are informed and believe, and based upon such information and belief allege that commencing on October 4, 2020 and continuing through at least April 21, 2021, Defendants, and each of them, through Silverstein, personally, both telephonically and via emails, made the intentional misrepresentations, failures to

disclose material information and suppression of facts set forth in Paragraphs 15 through 60 herein above and as evidenced by Exhibits "1" through "11" hereto, to Plaintiffs with regard to the investment venture with Defendants and Volta and/or other venture companies.

128.   Plaintiffs are informed and believe and thereon allege that Defendant Silverstein knew, suppressed and failed to reveal to Plaintiffs the true facts, and that Defendant Silverstein knew or should have known, at the time he made the misrepresentations that the suppression of said material facts were likely to mislead the Plaintiffs and did in fact mislead the Plaintiffs.

129.   Plaintiffs are informed and believe and thereon allege that the foregoing misrepresentations and failures to disclose information and suppressions of information herein alleged to have been made by Defendant Silverstein were made with the intent to induce Plaintiffs to act in the manner herein alleged in reliance thereon, and based thereon and upon the established relationship and trust and confidence that Plaintiffs reposed in Defendant Silverstein, and in actual and justifiable or reasonable reliance upon thereon, Plaintiffs invested $50,000.00 in the "investment program" as directed to do so by Defendant Silverstein.

130.   Plaintiffs, at the time these failures to disclose and suppressions of facts occurred, and at the time Plaintiffs took the actions herein alleged, were ignorant of the existence of the facts that Defendant Silverstein suppressed and failed to disclose.  If the Plaintiffs had been aware of the existence of the facts not disclosed by Defendant Silverstein, the Plaintiffs would not have, as they did, invested $50,000.00 in the investment program as directed to do so by Defendant Silverstein.

131.   As a proximate result of Defendants' fraud and deceit and the suppression of material facts as herein alleged, Plaintiffs have been damaged in an amount of at least the sum of Fifty Thousand and 00/100 Dollars ($50,000.00) or according to proof at the time of trial, together with interest thereon at the lawful rate of 10% per annum from and after October 8, 2020 on the sum of $30,000.00 and from and after November

6, 2020 on the sum of $20,000.00 plus the promised 10% per month return on their investment from and after October 8, 2020 on the sum of $30,000.00 and from and after November 6, 2020 on the sum of $20,000.00.

## NINTH CAUSE OF ACTION

(Fraud and Deceit - Promise Made Without Intent to Perform

Against All Defendants)

132.   Plaintiffs reallege and incorporate herein by reference Paragraphs 1 through 63, inclusive, of Plaintiffs' Complaint with the same force and effect as though set forth herein.

133.   Plaintiffs are informed and believe, and based upon such information and belief allege that commencing on October 4, 2020 and continuing through at least April 21, 2021, Defendants, and each of them, through Silverstein, personally, both telephonically and via emails, made the promises as set forth in Paragraphs 15 through 60 hereinabove and as evidenced by Exhibits "1" through "11" hereto, to Plaintiffs with regard to the investment venture with Defendants and Volta and/or other venture companies.

134.   The promises made by Defendants, and each of them, were in fact false, fraudulent and intentional. The true facts were that Defendants, and each of them, through Silverstein, knew, at the time they made the foregoing false and fraudulent promises that there was no "investment program" whereby Plaintiffs would be paid a 10% return per month on their principal investment and there were no bankers and/or investment companies involved and in truth and in fact it was a "scheme" orchestrated by Defendants.  All of the false and fraudulent promises were made by Defendants, through Silverstein, to induce Plaintiffs into depositing a total of $50,000.00 into Defendants' account.

135.   Furthermore, Plaintiffs believe that (a) the payment of $2,250.00 on November 3, 2020 (which was allegedly the first "return on their principal investment") and (b) Defendants' ongoing promises from November 4, 2020 through at least April

21, 2021 that Plaintiffs would in fact be paid their 10% per month return on their principal investment would be "paid" (as set forth in Paragraphs 23 through 60 hereinabove) were made with the intent to lull Plaintiff into a false sense of security so that Plaintiffs would deposit into Defendants' account an additional $20,000.00 which Plaintiffs did on November 6, 2020 (as set forth in Paragraph 25 and as evidenced by Exhibit "7" hereto) and not take the appropriate legal action to collect the outstanding amounts due by the bringing of a lawsuit.

136.   Furthermore, Plaintiffs believe and thereon allege that Defendants, and each of them, never forwarded the $50,000.00 deposited into Silverstein's Chase Bank account by Plaintiffs to Volta or any other investment venture but rather kept said monies in his own bank account and/or in bank accounts over which Silverstein had absolute custody and control, thus converting same to his own use and benefit so that he could use same to further his fraudulent "investment program" and/or his lifestyle.

137.   When Defendants, and each of them, intentionally made these false and fraudulent promises they knew them to be false, and these false and fraudulent promises were made by Defendants, and each of them, with the intent to defraud and deceive Plaintiffs, and with the intent to induce Plaintiffs to act in the manner herein alleged.

138.   Plaintiffs, at the time these false and fraudulent promises were made by Defendants, and each of them, and at the time Plaintiffs took the actions herein alleged, were ignorant of Defendants' secret intention not to perform and could not, in the exercise of reasonable diligence, have discovered Defendants' secret intention not to perform.  In justifiable reliance on these false and fraudulent promises, Plaintiffs were induced to and did deposit $50,000.00 in a bank account controlled, exclusively, by Silverstein.

139.   Had Plaintiffs known the actual facts, they would never have deposited said $50,000.00 into a bank account controlled by Silverstein.  Plaintiffs reliance on Defendants' false and fraudulent promises was justified because Silverstein (who is now and was, at all times mentioned herein, a Certified Public Accountant) had been a long-

1   time friend and personal and financial advisor to Plaintiffs.

2       140.   As a proximate result of Defendants' fraud and deceit and the facts herein

3   alleged, Plaintiffs were deprived of not only the promised 10% per month return on

4   their investment but the ability to invest their monies in a reliable investment program,

5   all to Plaintiffs' damage in at least the sum of Fifty Thousand and 00/100 Dollars

6   ($50,000.00) or according to proof at the time of trial, together with interest thereon at

7   the lawful rate of 10% per annum from and after October 8, 2020 on the sum of

8   $30,000.00 and from and after November 6, 2020 on the sum of $20,000.00 plus the

9   promised 10% per month return on their investment from and after October 8, 2020 on

10   the sum of $30,000.00 and from and after November 6, 2020 on the sum of $20,000.00.

11       141.   The aforementioned conduct of Defendants, and each of them, was

12   intentional misrepresentation, deceit or concealment of a material fact known to the

13   Defendants with the intention on the part of the Defendants of thereby depriving

14   Plaintiffs of property or legal rights or otherwise causing injury, and was despicable

15   conduct that subjected Plaintiffs to a cruel and unjust hardship in conscious disregard

16   of Plaintiffs' rights, so as to justify an award of punitive and exemplary damages.

17   **<u>TENTH CAUSE OF ACTION</u>**

18   (Unjust Enrichment Against All Defendants)

19       142.   Plaintiffs reallege and incorporate herein by reference Paragraphs 1

20   through 63, inclusive, of Plaintiffs' Complaint with the same force and effect as though

21   set forth herein.

22       143.   Plaintiffs are informed and believe and thereon allege that Defendants, and

23   each of them, have received a benefit at Plaintiff's expense.

24       60.   As alleged herein, as a direct and proximate result of the conduct of

25   Defendants, and each of them, Plaintiffs have been damaged in at least the sum of

26   $50,000.00 or an amount to be proved at trial together with interest thereon at the

27   lawful rate of 10% per annum from and after October 8, 2020 on the sum of $30,000.00

28   and from and after November 6, 2020 on the sum of $20,000.00 plus the promised 10%

per month return on their investment from and after October 8, 2020 on the sum of $30,000.00 and from and after November 6, 2020 on the sum of $20,000.00.

61.    As further alleged herein, Defendants, and each of them, have enjoyed a benefit as alleged in this Complaint to the detriment of Plaintiffs. Plaintiffs are informed and believe and thereon allege that the benefits conferred upon Defendants, and each of them, was the result of mistake, fraud or coercion, or request, thus making their enrichment unjust.

## ELEVENTH CAUSE OF ACTION

### (Conversion Against All Defendants)

144.    Plaintiffs reallege and incorporate herein by reference Paragraphs 1 through 63, inclusive, of Plaintiffs' Complaint with the same force and effect as though set forth herein.

145.    From on or about at least October 8, 2020 through the present, Plaintiffs were and still are the owners of and entitled to possession of the $50,000.00 deposited into the Chase Bank account of Defendant Silverstein at his specific insistence and request as evidenced by Exhibits "4" and "7" hereto.

146.    From on or about at least October 8, 2020 through the present, the above-mentioned property had a value of at least Fifty Thousand and 00/100 Dollars ($50,000.00).

147.    From on or about at least October 8, 2020 through the present, Defendants, and each of them, took the above-mentioned property from Plaintiffs and converted the same to their own use and benefit.

148.    From on or about March 1, 2021 through the present, when Plaintiffs first realized that Defendants, and each of them, had taken Plaintiffs' monies/property and converted same to their own use and benefit, Plaintiffs demanded, orally and in writing, that Defendants immediately turn over the above-mentioned property to Plaintiffs but Defendants, and each of them, to date, have failed and refused and continue to fail and refuse to do so.

149.   As a proximate result of Defendants' conversion, Plaintiffs have been deprived of the use and benefit to be derived from the property converted, all to Plaintiffs' damage in at least the sum of Fifty Thousand and 00/100 Dollars ($50,000.00) or according to proof at the time of trial together with interest thereon at the lawful rate of 10% per annum from and after October 8, 2020 on the sum of $30,000.00 and from and after November 6, 2020 on the sum of $20,000.00 plus the promised 10% per month return on their investment from and after October 8, 2020 on the sum of $30,000.00 and from and after November 6, 2020 on the sum of $20,000.00.

150.   Between the time of Defendants' conversion of the above-mentioned monies/property to their own use and benefit and the filing of this action, Plaintiffs have expended numerous hours of time and effort in pursuit of the converted property, all to Plaintiffs' further damage in an amount as yet unascertained but believed to be in excess of $50,000.00 or according to proof at the time of trial.

151.   Since Defendants, and each of them, knew that Plaintiffs needed the aforesaid property for their granddaughters' college education, and that they would incur substantial hardship and expenses as a result of the conversion of the property belonging to Plaintiffs by Defendants to themselves for their own use and benefit, the aforementioned conduct of Defendants, and each of them, was done with the intention on the part of the defendants of depriving Plaintiffs' property and/or legal rights and otherwise causing injury and was despicable conduct and subjected Plaintiffs to cruel and unjust hardships in conscious disregard of Plaintiffs' rights so as to justify an award of exemplary and punitive damages.

## TWELFTH CAUSE OF ACTION

(Negligent Misrepresentation Against all Defendants)

152.   Plaintiffs reallege and incorporate herein by reference Paragraphs 1 through 63, inclusive, of Plaintiffs' Complaint with the same force and effect as though set forth herein.

153.   In order to state a claim for negligent misrepresentation, Plaintiffs must

plead: (1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) within intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation; and (5) resulting damage. *Apollo Fund, LLC v. Roth Capital Partners, LLC*, 158 Cal.App.4th 226, 243 (2007). "Negligent misrepresentation is a species of fraud or deceit specifically requiring an assertion." *Wilson v. Century 21*, 15 Cal.App.4th 298, 306 (1993). Yet unlike an allegation of fraud, "negligent misrepresentation does not require knowledge of falsity." *Apollo*, 158 Cal.App.4th at 243. Moreover, the Ninth Circuit has not yet decided whether the heightened pleading requirements under Rule 9 applied in negligent misrepresentation claims. *Petersen v. Allstate Indemnity Co.*, 281 F.R.D. 413, 418-19 (C.D. Cal. 2012).

154. In light of the fact that Plaintiffs have stated and set forth a valid claim for fraud against the Defendants based on the facts alleged hereinabove, we ask the Court to also find that Plaintiffs have stated a claim for negligent misrepresentation. *See Cisco Systems, Inc. v. Tsai*, 215 W.L. 1273249 at *5 (C.D. Cal. January 9, 2015) (confirming claim for negligent misrepresentation can be established by the same elements of fraud but without the knowledge element).

## **PRAYER**

**WHEREFORE**, Plaintiffs pray for relief as follows:

On the First Cause of Action:

1. For damages in at least the sum of Fifty Thousand and 00/100 Dollars ($50,000.00) or according to proof at the time of trial;

2. For interest thereon at the lawful rate of 10% per annum from and after October 8, 2020 on the sum of $30,000.00 and from and after November 6, 2020 on the sum of $20,000.00;

3. For the promised 10% per month return on their investment from and after October 8, 2020 on the sum of $30,000.00 and from and after November 6, 2020 on the sum of $20,000.00;

1    4.    For punitive and exemplary damages to the extent provided by law;

2    On the Second Cause of Action

3    5.    For damages in at least the sum of Fifty Thousand and 00/100 Dollars

4    ($50,000.00) or according to proof at the time of trial;

5    6.    For interest thereon at the lawful rate of 10% per annum from and after

6    October 8, 2020 on the sum of $30,000.00 and from and after November 6, 2020 on the

7    sum of $20,000.00;

8    7.    For the promised 10% per month return on their investment from and after

9    October 8, 2020 on the sum of $30,000.00 and from and after November 6, 2020 on the

10   sum of $20,000.00;

11   On the Third Cause of Action

12   8.    For damages in at least the sum of Fifty Thousand and 00/100 Dollars

13   ($50,000.00) or according to proof at the time of trial;

14   9.    For interest thereon at the lawful rate of 10% per annum from and after

15   October 8, 2020 on the sum of $30,000.00 and from and after November 6, 2020 on the

16   sum of $20,000.00;

17   10.   For the promised 10% per month return on their investment from and after

18   October 8, 2020 on the sum of $30,000.00 and from and after November 6, 2020 on the

19   sum of $20,000.00;

20   11.   For punitive and exemplary damages to the extent provided by law;

21   On the Fourth Cause of Action

22   12.   For damages in at least the sum of Fifty Thousand and 00/100 Dollars

23   ($50,000.00) or according to proof at the time of trial;

24   13.   For interest thereon at the lawful rate of 10% per annum from and after

25   October 8, 2020 on the sum of $30,000.00 and from and after November 6, 2020 on the

26   sum of $20,000.00;

27   14.   For the promised 10% per month return on their investment from and after

28   October 8, 2020 on the sum of $30,000.00 and from and after November 6, 2020 on the

sum of $20,000.00;

15.     For punitive and exemplary damages to the extent provided by law;

On the Fifth Cause of Action

16.     For damages in at least the sum of Fifty Thousand and 00/100 Dollars ($50,000.00) or according to proof at the time of trial;

17.     For interest thereon at the lawful rate of 10% per annum from and after October 8, 2020 on the sum of $30,000.00 and from and after November 6, 2020 on the sum of $20,000.00;

18.     For the promised 10% per month return on their investment from and after October 8, 2020 on the sum of $30,000.00 and from and after November 6, 2020 on the sum of $20,000.00;

On the Sixth Cause of Action

19.     For damages in at least the sum of Fifty Thousand and 00/100 Dollars ($50,000.00) or according to proof at the time of trial;

20.     For interest thereon at the lawful rate of 10% per annum from and after October 8, 2020 on the sum of $30,000.00 and from and after November 6, 2020 on the sum of $20,000.00;

21.     For the promised 10% per month return on their investment from and after October 8, 2020 on the sum of $30,000.00 and from and after November 6, 2020 on the sum of $20,000.00;

22.     For punitive and exemplary damages to the extent provided by law;

On the Seventh Cause of Action

23.     For damages in at least the sum of Fifty Thousand and 00/100 Dollars ($50,000.00) or according to proof at the time of trial;

24.     For interest thereon at the lawful rate of 10% per annum from and after October 8, 2020 on the sum of $30,000.00 and from and after November 6, 2020 on the sum of $20,000.00;

25.     For the promised 10% per month return on their investment from and after

1  October 8, 2020 on the sum of $30,000.00 and from and after November 6, 2020 on the

2  sum of $20,000.00;

3  On the Eighth Cause of Action:

4       26.    For damages in at least the sum of Fifty Thousand and 00/100 Dollars

5  ($50,000.00) or according to proof at the time of trial;

6       27.    For interest thereon at the lawful rate of 10% per annum from and after

7  October 8, 2020 on the sum of $30,000.00 and from and after November 6, 2020 on the

8  sum of $20,000.00;

9       28.    For the promised 10% per month return on their investment from and after

10  October 8, 2020 on the sum of $30,000.00 and from and after November 6, 2020 on the

11  sum of $20,000.00;

12       29.    For punitive and exemplary damages to the extent provided by law;

13  On the Ninth Cause of Action:

14       30.    For damages in at least the sum of Fifty Thousand and 00/100 Dollars

15  ($50,000.00) or according to proof at the time of trial;

16       31.    For interest thereon at the lawful rate of 10% per annum from and after

17  October 8, 2020 on the sum of $30,000.00 and from and after November 6, 2020 on the

18  sum of $20,000.00;

19       32.    For the promised 10% per month return on their investment from and after

20  October 8, 2020 on the sum of $30,000.00 and from and after November 6, 2020 on the

21  sum of $20,000.00;

22  On the Tenth Cause of Action:

23       33.    For damages in at least the sum of Fifty Thousand and 00/100 Dollars

24  ($50,000.00) or according to proof at the time of trial;

25       34.    For interest thereon at the lawful rate of 10% per annum from and after

26  October 8, 2020 on the sum of $30,000.00 and from and after November 6, 2020 on the

27  sum of $20,000.00;

28       35.    For the promised 10% per month return on their investment from and after

COMPLAINT

October 8, 2020 on the sum of $30,000.00 and from and after November 6, 2020 on the sum of $20,000.00;

36.    For punitive and exemplary damages to the extent provided by law;

On the Eleventh Cause of Action:

37.    For damages in at least the sum of Fifty Thousand and 00/100 Dollars ($50,000.00) or according to proof at the time of trial;

38.    For interest thereon at the lawful rate of 10% per annum from and after October 8, 2020 on the sum of $30,000.00 and from and after November 6, 2020 on the sum of $20,000.00;

39.    For the promised 10% per month return on their investment from and after October 8, 2020 on the sum of $30,000.00 and from and after November 6, 2020 on the sum of $20,000.00;

On All Causes of Action

40.    For costs of suit incurred herein; and

41.    For any such other and further relief as this Honorable Court deems just and proper.

DATED: November 30, 2021

Respectfully submitted,

RONALD P.  SLATES
A PROFESSIONAL CORPORATION

/s/ RONALD P. SLATES

BY: RONALD P. SLATES
Attorney for Plaintiffs John (Beau) Billingslea, an individual
and Cecelia Billingslea, an individual

COMPLAINT

**VERIFICATION**

STATE OF CALIFORNIA          )
                             )  ss
COUNTY OF LOS ANGELES        )

I, the undersigned, say:

I, JOHN (BEAU) BILLINGSLEA, am one of the Plaintiffs in the above-entitled action; I have read the foregoing COMPLAINT FOR: 1. Violation of § 10(b) of the Securities Exchange Act of 1933 and Rule 10(b)-(5); 2. Violation of § 12(a)(1) of the 1933 Securities Act; 3. Violation of the Racketeering Influence and Corrupt Organizations "RICO"; 4. Breach of Contract; 5. Fraud and Deceit - Intentional Misrepresentation - Suppression of Fact; 6. Fraud and Deceit - Negligent Misrepresentation - Suppression of Fact; 7. Fraud and Deceit - Intentional Misrepresentation - Fraud in the Inducement; 8. Fraud and Deceit - Negligent Misrepresentation - Fraud in the Inducement; 9. Fraud and Deceit - Promise Made Without Intent to Perform; 10. Unjust Enrichment; 11. Conversion; and 12. Negligent Misrepresentation and know the contents thereof; and that the same is true of my own knowledge, except as to the matters which are therein stated upon my information and belief, and as to those matters that I believe it to be true.

I certify (or declare) under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

Executed on November 30, 2021, at Los Angeles, California.

JOHN (BEAU) BILLINGSLEA

COMPLAINT