UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 21-9369-DMG (RAOx)** | Date | February 3, 2023 |
| Title | *John Beau Billingslea, et al. v. Howard M. Silverstein, et al.* | Page | 1 of 9 |

Present: The Honorable   DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS—ORDER RE PLAINTIFFS' APPLICATION FOR DEFAULT JUDGMENT [49]**

On December 2, 2021, Plaintiffs John Beau Billingslea and Cecelia Billingslea filed their Complaint against Defendants Howard M. Silverstein (d/b/a H Silverstein and Company CPA, Markay Financial Corporation), and Does 1–10. [Doc. # 1.] The Complaint alleges 12 causes of action related to alleged fraud, misrepresentation, and unjust enrichment by Defendants in their capacity as Plaintiffs' financial advisor. *See id.* On April 18, 2022, Plaintiffs filed a First Amended Complaint ("FAC") with substantially similar allegations and causes of action. [Doc. # 16.]

Despite being properly served with the FAC, all Defendants failed to answer or otherwise appear. [*See* Doc. ## 51, 54, 55.] On July 1 and 7, 2022, the Clerk entered default as to Defendants Markay Financial Corporation and Howard Silverstein, respectively. [Doc. ## 37, 44.] On August 13, 2022, Plaintiffs filed a Motion for Default Judgement against both Defendants. *See* Mot. for Default Judgment ("MDJ") [Doc. # 49]. For the reasons discussed in this Order, the Court **GRANTS** Plaintiffs' MDJ.

**I.
BACKGROUND**

On October 4, 2020, during a FaceTime meeting between Silverstein and Plaintiffs, Silverstein explained an investment "program," directing Plaintiffs to deposit their money into Silverstein's Chase Bank account. FAC ¶ 22. Silverstein told Plaintiff he would send their money to the "Volta Energy Opportunity Fund" in the U.K. which was allegedly managed by Rupon Anandanadarajah ("Anandanadarajah"). *Id.*; *see also* Decl. of Ronald P. Slates in Support of Pls.' App. for Entry of Default Judgment [Doc. # 49-1 ("Slates Decl.")], Ex. 1 at 30–59 (PDF printout of Volta Investment Group website ("Volta Pamphlet")). Plaintiffs were promised they would be paid a 10% return on their principal investment, and could withdraw their money at any time. FAC ¶ 22. He told them it was a "safe investment." *Id.* Plaintiffs allege that they never suspected any

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 21-9369-DMG (RAOx) | Date | February 3, 2023 |
|---|---|---|---|
| Title | John Beau Billingslea, et al. v. Howard M. Silverstein, et al. | Page | 2 of 9 |

bad faith because Silverstein was a "close personal friend, confidant, [and] personal and financial advisor to Plaintiffs" and they had "a high degree of confidence" in him. *Id.* ¶ 21.

On October 8, 2020, Plaintiffs deposited their check in the sum of $30,000.00 into Silverstein's Chase Bank account. *Id.* ¶ 26. On November 3, 2020, a $2,250.00 payment for October was deposited into Plaintiffs' bank account, which was the only return on investment payment ever received. *Id.* ¶ 28. On November 6, 2020, Plaintiffs deposited another $20,000.00 into Silverstein's Chase bank account, bringing the total to $50,000.00. *Id.* at 30.

For the next two years, Silverstein frequently promised Plaintiffs that repayment "was just around the corner," but he could not provide any specifics. *Id.* ¶ 72. He continued to evade them, and would not provide Anandanadarajah's contact information upon repeated request. *Id.* ¶¶ 52–73. On March 4, 2022, Silverstein left a final voicemail message for Billingslea where Silverstein acknowledged owing the Billingsleas' money and stated that he'd be "getting that done!" FAC ¶ 73. To date, Plaintiffs have not received any payment from any Defendant. MDJ at 1.

Plaintiffs brought this suit for damages on December 2, 2021. [Doc. # 1.] Plaintiffs now demand damages in the amount of the $50,000 they originally invested and any interest accrued at the agreed-upon rate of return on investment of 10% annually from November 6, 2020 through August 1, 2022 ($110,000), interest at the lawful rate of 7% annually on the $50,000 from November 6, 2020 through August 8, 2022 ($6,687.59), punitive damages ($250,000), and attorneys' fees and costs ($94,478). Slates Decl. ¶ 2. The total amount of damages requested is $511,165.59. *Id.*

II.
DISCUSSION

A.      Federal Rule of Civil Procedure 55(b)(2), Local Rule 55-1, and the *Eitel* Factors

Plaintiffs have complied with the procedural requirements applicable to default judgments. *See* Fed. R. Civ. P. 55(b)(2); C.D. Cal. L.R. 55-1; Slates Decl. ¶ 2. Plaintiffs have also shown that the *Eitel* factors weigh in favor of entering a default judgment against Defendants. *See Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). In *Eitel*, the Ninth Circuit set forth a number of factors that courts may consider when evaluating a default judgment motion: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 21-9369-DMG (RAOx) | Date | February 3, 2023 |
|---|---|---|---|
| Title | *John Beau Billingslea, et al. v. Howard M. Silverstein, et al.* | Page | 3 of 9 |

policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Id.* at 1471–72.

1. **Possibility of Prejudice to Plaintiffs**

Plaintiffs will be prejudiced without a default judgment—no other enforceable form of relief against Defendants exists at this stage of the proceedings and Plaintiffs have already incurred expenses pursuing their claims. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Since a default has been entered, the Court presumes that Plaintiffs' allegations in their Complaint are true. *See Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). Absent entry of a default judgment, Plaintiffs are likely to be prejudiced given Defendants' unwillingness to appear, plead, or otherwise defend within the time allowed. *See* Slates Decl. ¶ 30.

The first factor therefore weighs in favor of default judgment.

2. **Merits of Plaintiffs' Substantive Claim and Sufficiency of Plaintiffs' Complaint**

Since default has been entered, the Court presumes that Plaintiffs' allegations are true. *See Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) ("[U]pon default[,] the factual allegations of the complaint, *except those relating to the amount of damages*, will be taken as true.") (emphasis added).

Federal Rule of Civil Procedure 9(b) mandates a heightened pleading standard for cases sounding in fraud, such as this one. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Under Rule 9(b)'s heightened pleading standard, "a party must state the particularity of the circumstances constituting fraud," meaning that the "pleading must identify the who, what, when, where, and how of the misconduct charged." *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal citations and quotation marks omitted).

Plaintiffs' allegations are sufficient to meet Rule 9's heightened pleading standard. The FAC provides identifying information for Defendant Silverstein, including his phone number and email address. FAC ¶ 6. The allegations provide specific details about his role in Markay Financial as controlling shareholder, owning 100% of its stock. FAC ¶¶ 9–11. It also identifies specific dates when the fraudulent conduct took place, and describes it in great detail, including corroborating documentation where possible. *See, e.g.*, FAC ¶¶ 22 (describing initial meeting between Plaintiffs and Defendant Silverstein on October 4, 2020), 23 (describing follow-up

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 21-9369-DMG (RAOx) | Date | February 3, 2023 |
|---|---|---|---|
| Title | *John Beau Billingslea, et al. v. Howard M. Silverstein, et al.* | Page | 4 of 9 |

correspondence and attaching copy of relevant email), 56 (describing details of phone call on April 5, 2021).

The Court will now turn to the individual claims alleged.

### a. Section 10(b) of the Securities Exchange Act of 1933

Count I of the FAC alleges a violation of section 10(b) of the Securities Exchange Act of 1933 and Rule 10(b)-(5) (together, "Section 10(b) claim"), which provides a private right of action for investors harmed by such violations. MDJ at 30 (citing 17 C.F.R. § 240.10b-5). The elements of a Section 10(b) claim are: (1) a material misrepresentation (or omission); (2) scienter, *i.e.*, a wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance, often referred to in cases involving public securities markets (fraud-on-the-market cases) as a transaction causation; (5) economic loss; and (6) loss causation, *i.e.*, a causal connection between the material misrepresentation and the loss. *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005).

For the claim to be actionable against Silverstein as an individual, he must be a "control person" of H. Silverstein and Company CPA within the meaning of section 20(a) of the Act. 15 U.S.C. § 78(t). Plaintiffs' allegations satisfy this requirement. *See* FAC ¶¶ 8–12, 77–81.

### i. Material Misrepresentation

Plaintiffs have alleged facts fulfilling all elements of their Section 10(b) claim. The FAC is replete with allegations of Silverstein's misrepresentations to Plaintiffs, such as promising that their initial deposit would be a "safe investment," and that he would "never encourage [them] to enter into an investment which was not totally safe or could/would in any way result in the loss of [their] investment." FAC ¶ 22. He initially told them that they would be able to withdraw their money at any time. FAC ¶ 22a. He also told them that he had direct and supervisory involvement in the operations of two venture companies known as "Volta" and "Rockwall Energy Fund," the latter of which turned out to be completely made up. *Id.* ¶¶ 40 (on March 3, 2021), 90. He repeatedly told them he would wire them back their money in the next day or two, and then made up a plethora of excuses as to why he did not follow through on that promise. *See, e.g.*, *id.* ¶¶ 44, 46, 48.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 21-9369-DMG (RAOx)** | Date | February 3, 2023 |
|---|---|---|---|
| Title | ***John Beau Billingslea, et al. v. Howard M. Silverstein, et al.*** | Page | 5 of 9 |

### ii. Wrongful State of Mind

The description of Defendants' obstructionism strongly suggests that Silverstein had full knowledge of the falsity of his statements and intended to deceive Plaintiffs. *See, e.g.*, *id.* ¶¶ 31 (Silverstein advising J. Billingslea on December 15, 2020 that he had not returned payment due to hospital stay), 34 (January 16, 2021 email from Silverstein promising payment "early this week"). Indeed, one of the venture companies he claimed to be running turned out to be non-existent. *Id.* ¶ 40. The allegations in the FAC, taken as true, make clear that Silverstein deliberately deceived Plaintiffs and never intended to pay Plaintiffs the promised return on investment.

### iii. Connection with the Purchase or Sale of a Security

The definition of "security" includes "ordinary stocks and bonds, along with the 'countless and variable schemes devised by those who seek the use of the money of others on the promise of profits . . . ." *Marine Bank v. Weaver*, 455 U.S. 551, 555–56 (1982) (quoting *SEC v. W. J. Howey, Co.*, 328 U.S. 293, 299 (1946)).

Silverstein told Plaintiffs they were investing in, *inter alia*, the Volta Fund, which advertised two fund strategies: (1) private energy commodity trading in the secondary market; and (2) private equity investment into construction and/or acquisition of energy or transport assets. Volta Pamphlet at 5. The money was instructed to be wired into the lawyers trust account, who would then provide the collateral for the traders to negotiate the contract. Slates Decl., Ex. B (email from Silverstein to B. Billingslea dated Oct. 4, 2020) at 61 [Doc. # 49-1]. Here, Silverstein's misrepresentations to Plaintiffs were connected with the alleged sale of a security.

### iv. Reliance

Silverstein actively solicited Plaintiffs' investment, and promised them a significant return. *See, e.g.*, FAC ¶ 22. He even appealed to their friendship with him, touting his role as a "trusted confidant and personal and financial advisor" to induce their justifiable reliance on his promise. *Id.*

### v. Economic Loss Caused by Defendants' Misrepresentations

Plaintiffs' allegations satisfy Section 10(b)'s economic loss and causation elements.

On October 4, 2020, the parties entered into a written contract whereby Plaintiffs invested $50,000 with Defendants and were guaranteed a return on their investment of 10% per month, and that Plaintiffs' investment would be returned to them at any time when Plaintiffs made a request

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 21-9369-DMG (RAOx)** | Date | February 3, 2023 |
|---|---|---|---|
| Title | ***John Beau Billingslea, et al. v. Howard M. Silverstein, et al.*** | Page | 6 of 9 |

therefor. FAC ¶¶ 22–31; *see also* Decl. of B. Billingslea ("B. Billingslea Decl.") ISO MDJ ¶¶ 12–55 [Doc. # 49-2].

Between October 4, 2020 to the present, Plaintiffs have received $2,250 which is the only return on investment payment ever received despite Defendants' repeated fraudulent promises that additional sums were forthcoming. FAC ¶ 28. Plaintiffs have lost the benefit of their bargain, which was the return of their original investment in the amount of $110,000 together with interest at the lawful rate of 7% per year on the sum of $50,000 from November 6, 2020 through August 6, 2022 in the amount of $6,309.87. MDJ at 42.

### b. Remaining Claims

Since Plaintiffs seek a specific amount of compensatory and punitive damages that can be recovered in its entirety through their Section 10(b) claim, the Court **DENIES** the MDJ as to the remaining claims without prejudice as **MOOT**.

### 3. The Sum of Money at Stake

The next *Eitel* factor examines the amount of money at stake in the action relative to the gravity of the defendant's conduct. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002). "Default judgment is disfavored where the sum of money at stake is too large or unreasonable in relation to defendant's conduct." *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1012 (C.D. Cal. 2014).

Plaintiffs request that this Court award damages in the amount of $50,000 plus the agreed upon return on investment of 10% per month from November 6, 2020 through August 1, 2022 in the amount of $110,000, together with interest at the lawful rate of 7% per year on the sum of $50,000 from November 6, 2020 through August 8, 2022 in the amount of $6,687.59, plus punitive damages in the amount of $250,000. MDJ at 40. Plaintiffs also request statutory attorneys' fees and costs pursuant to 15 U.S.C. section 78u-4(a)(6) in the amount of $94,478.00 for a total of $511,165.59.

Large amounts can be awarded on default judgment when plaintiff provides a detailed justification for those damages through a declaration and supporting evidence. *See NewGen v. State Cig.*, 840 F.3d 606, 617 (9th Cir. 2016). Plaintiffs have done so here. *See* Slates Decl. ¶ 2; B. Billingslea Decl. ¶¶ 15–20; Decl. of Cecelia Billingslea ISO MDJ at ¶¶ 6–11 [Doc. # 49-3].

This *Eitel* factor favors entry of default judgment against Defendants.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 21-9369-DMG (RAOx)** | Date | February 3, 2023 |
| Title | ***John Beau Billingslea, et al. v. Howard M. Silverstein, et al.*** | Page | 7 of 9 |

**4. The Possibility of a Dispute Concerning Material Facts**

There is no possibility of a dispute concerning the material facts of the case because the well-pleaded factual allegations are presumed to be true. This *Eitel* factor thus weighs in favor of default judgment.

**5. Excusable Neglect**

Under this factor, the Court must consider whether Defendants' default may have been due to excusable neglect. *Eitel*, 782 F.2d at 1472. This factor favors default judgment where the defendant has been properly served or the plaintiff demonstrates the defendant is aware of the action. *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F.Supp.2d 1072, 1082 (C.D. Cal. 2012). Defendant Silverstein was properly served, as discussed above, and excusable neglect appears highly unlikely. This factor weighs in favor of default judgment.

**6. Strong Policy Favoring Decisions on the Merits**

Notwithstanding the strong policy presumption in favor of a decision on the merits, Defendants' failure to defend themselves in this action makes a decision on the merits impractical. Therefore, this factor does not prevent the imposition of a default judgment.

\* \* \* \* \*

Given the foregoing, the Court concludes that the entry of a default judgment against Defendants is appropriate.

**B.    Remedies**

Defendants will be jointly and severally liable for any damages awarded. *See Henry v. Superior Court*, 160 Cal. App. 4th 440, 450 (2008); Cal. Civ. Code § 1431.2; Slates Decl., Ex. 2 (California Secretary of State Statement of Information for Markay Financial Corporation) at 94–96 [Doc. # 49-1].

Because Plaintiffs have proved their damages, the Court grants their request for the return of their principal ($50,000), plus the promised return on investment at a rate of 10% per month from and after October 8, 2020 ($110,000), and 7% interest from November 6, 2020 to August 8, 2022 ($6,687.59). This number is equal to that which they deposited and the lawful interest rate

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 21-9369-DMG (RAOx)** | Date | February 3, 2023 |
|---|---|---|---|
| Title | ***John Beau Billingslea, et al. v. Howard M. Silverstein, et al.*** | Page | 8 of 9 |

to which they are entitled. *See* Slates Decl. ¶ 47; *id.*, Exs. D ($30,000 check from J. Billingslea to Silverstein dated Oct. 8, 2020) at 66 [Doc. # 49-1], G ($20,000 check from J. Billingslea to Silverstein dated Nov. 6, 2020) at 84 [Doc. # 49-1].

Further, Plaintiffs' attorney, Ronald Slates, requests $94,478, which includes $82,664.34 in fees and $11,813.66 in costs. MDJ at 43–44. Having reviewed the records submitted, the Court concludes that he is entitled to fees for the full amount of time billed, and the full amount of costs. Slates submitted detailed timesheets produced by the firm's "JURIS" billing system, which he reviews at the end of each billing month before finalizing, as the principal custodian of the firm's business records. *Id.* ¶¶ 41–43; *see also* Slates Decl., Ex. 4 at 103–209 (itemized billing timesheets) [Doc. # 49-1]. He also provided itemized lists of costs for each billing period. Slates Decl., Ex. 4 at 115, 122, 127, 143, 158, 162, 171, 192. The Court has reviewed the billing records, and they are adequately detailed and reasonable for the hours expended on this matter.

Slates did not, however, submit evidence explaining why the rates sought are comparable to the prevailing market rate in the relevant community, or even the years of experience for his colleagues who billed time in this case. *See Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016). He seeks fees at the rate of $695/hour for time billed by himself as Managing Attorney and for the Senior Attorneys "of counsel" to the firm, $595/hour for time billed by Associate Attorneys, $495/hour for time billed by the Senior Legal Assistant, $295/hour for time billed by the Senior Paralegal and for the In-House Investigator and Process Server. Slates Decl. ¶ 40.

The Court commends Slates' meticulous timekeeping, and notes that he already discounted many of the hours on his timesheets, but cannot award fees at the rates requested. *Id.* ¶ 44. Since the entries are so detailed and the rate he requested for himself—an attorney with over 40 years of experience—is comparable to the *Laffey* Matrix, the Court will only apply a 5% across-the-board cut to the requested fee award. The total fee award requested, excluding costs, was $82,664.34, so the Court will award Slates $78,531.12 in fees and the full $11,813.66 in costs.

Plaintiff also requests for punitive damages in the amount of $250,000. MDJ at 42. In California, "[t]hree primary considerations govern the amount of punitive damages: (1) the reprehensibility of the defendant's conduct; (2) the injury suffered by the victims; and (3) the wealth of the defendant." *Rufo v. Simpson*, 86 Cal. App. 4th 573, 620 (2001). Punitive damages are distinct from compensatory damages, as compensatory damages are designed to redress an actual loss of the plaintiff, while punitive damages are designed to punish the defendant for wrongful conduct and to deter similar conduct in the future. *Planned Parenthood of the Columbia/Willamette, Inc. v. American Coalition of Life Activists*, 422 F.3d 949, 953 (9th Cir. 2005).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 21-9369-DMG (RAOx)** | Date | February 3, 2023 |
|---|---|---|---|
| Title | ***John Beau Billingslea, et al. v. Howard M. Silverstein, et al.*** | Page | 9 of 9 |

The Court agrees that Plaintiffs have shown by clear and convincing evidence that Defendants' conduct was egregious and "deceitful." *See* MDJ at 35–36. Still, there is no apparent value in awarding punitive damages in this case. "Absent a consideration of a defendant's financial condition, a court (whether at the trial or appellate level)) simply cannot make an informed decision whether . . . 'a particular award is greater than reasonably necessary.'" *Adams v. Murakami*, 54 Cal. 3d 105, 118 (1991) (quoting *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 1046 (1991)); *see also Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1011 (N.D. Cal. 2001) (the Court "cannot make a fully informed determination of whether an award of punitive damages is excessive unless the record contains evidence of a defendant's financial condition") (citation, internal brackets, and quotation marks omitted). Given the nature of Defendants' conduct, the Court may have awarded some amount of punitive damages if Plaintiffs had submitted information showing that Defendants had a wealth of assets. But the only probative evidence submitted about Defendants' financial condition is another default judgment entered against them for similar conduct, and allegations that Silverstein himself stated he had "financial problems," has no assets, and is insolvent. *See* MDJ at 24 – 25; Slates Decl. ¶¶ 20, 25; Pls.' Req. for Judicial Not. ("RJN"), Ex. 6 (Default Judgment in Orange County Superior Court Action Case No. 30-2020-01144088-CU-BC-CJC) at 46–51 [Doc. # 49-5].[1]

Although Plaintiffs have successfully pleaded their claims, in light of Defendants' financial situation the Court declines to grant any punitive damages in addition to the significant compensatory damages and fees.

### III.
### CONCLUSION

In light of the foregoing, the Court **GRANTS in part and DENIES in part** Plaintiffs' MDJ against Defendants Silverstein and Markay. Defendants shall be jointly and severally liable to Plaintiffs for the amount of their principal, plus the promised return on investment at a rate of 10% per month from and after October 8, 2020, and 7% interest from November 6, 2020 to August 8, 2022, for a total amount of **$166,687.59**, plus **$78,531.12** in attorneys' fees and **$11,813.66** in costs.

**IT IS SO ORDERED.**

---

[1] The Court **GRANTS** Plaintiffs' RJN as to this document. *See, e.g., Tan v. GrubHub, Inc.*, 171 F. Supp. 3d 998, 1003 n.2 (N.D. Cal. 2016) (court may properly take judicial notice of court records, including those of state courts). Since it did not rely on the other exhibits in reaching its decision, the rest of the RJN is **DENIED as moot**.